# SUPREME COURT.

## BLAISDELL agt. RAYMOND and others.

The office of an *innuendo*, in an action of libel or slander, is to connect the words, published or spoken, with the persons, or facts and extrinsic circumstances, previously named, and set forth in the inducement, and to explain their application thereto; and, being merely *explanatory*, cannot enlarge the sense of words, or supply or alter them, where they are deficient.

*Defects* in *innuendoes* are usually apparent upon the face of the pleading, and formerly would have been taken advantage of by special demurrer; but, under the Code, the remedy is by motion to strike out.

It is the province of the jury to determine the meaning of a libel; and where there are allegations in the complaint in the form of innuendoes, but in fact are asseverations of the import of the publication itself, and present the precise points upon which the jury must pass, they are not innuendoes in the proper sense of that term, but are allegations of issuable facts founded upon the matter contained in the published article, and are required to be answered.

*New-York Special Term, June,* 1857.

IN this action of an alleged libel, published in *The N. Y. Daily Times,* a motion was made by the defendants to strike out passages of the complaint, on the ground that they consisted of innuendoes improperly framed, and unsupported by the article published containing the supposed defamatory matter.

C. F. WETMORE, *for plaintiff.*

L. ABBOTT, *for defendants.*

CLERKE, Justice. This is an action for an alleged libel published in *The Daily Times,* of which the defendants are the proprietors. The defendants move to have certain passages struck out of the complaint, on the ground that they consist of innuendoes not properly framed, and not supported by the published article containing the supposed defamatory matter.

The defendants' counsel refers to authorities, which he maintains are irreconcilable, on the subject of innuendoes in a com-

plaint in this description of action; some of these authorities, he insists, deciding that an answer taking issue on an innuendo is bad; while others decide that its truth or falsehood can be determined by the jury, and that, therefore, an answer taking issue on them is proper. To avoid the perplexity and danger to their defence, which these supposed conflicting decisions occasion, the defendants ask either to be released from the necessity of answering these passages in the complaint, by having them struck out; or, if they should answer them, that they may do so under the sanction of the court.

On the first glance, the decisions, to which the counsel for the defendants refers, appear to be inconsistent; but it will be found, I think, on carefully considering those decisions, that their apparent disagreement arises from some want of perspicuity in speaking of the nature and purpose of innuendoes, and from confounding them with what are, in reality, only propositions, affirming the meaning of the supposed defamatory matter.

An action for spoken or written defamation is somewhat *sui generis;* and it is not always easy to distinguish between what should, on the trial, be decided by the court, and what should be left to the jury.

When a publication is so indirect and ambiguous in its terms, as that its libelous tendency is not apparent on its face, extrinsic circumstances must be averred, and the connection pointed out by an innuendo.

The office of the innuendo is to explain the application of the words employed in the offensive publication, by connecting them with the extrinsic circumstances previously set forth in the inducement. This is strictly its only purpose. The design of the innuendo is well illustrated by the familiar example (4 *Cow. R.* 20,) taken from an old case where the libelous words were, "he has burnt my barn," with the innuendo, "meaning a barn with corn." An innuendo here was necessary, because burning a barn, at the time the action in that case was commenced, was not a felony; but it was held to have been improperly employed, as it was not supported by introductory facts. If it had been averred, by way of inducement,

that the defendant had a barn full of corn, and that in a con-
versation respecting that barn the words were uttered, the
innuendo would have been good; and, by its connecting the
libel with the inducement, the sense would have been complete.
This rule, requiring the preliminary statement of extrinsic facts
to support an innuendo, prevents obscurity and confusion, and
is as indispensable now as under our former system, except for
the purpose of showing the application to the plaintiff of the
defamatory matter out of which the cause of action arose—it
being sufficient for this purpose to state generally that the same
was published " of and concerning the plaintiff;" (*Code*, § 164;)
but where the words do not convey a direct slanderous imputa-
tion, it is still necessary to state extrinsic facts for the purpose
of showing the defamatory tendency of the words themselves—
as in the case from *Coke*, to which I have referred.

I repeat, then, that the office of an innuendo is to connect
the published words with persons, or facts, previously named,
and being merely explanatory, cannot enlarge the sense of
words, or supply or alter them where they are deficient. Any
defect, therefore, in the innuendo, such as that, it is not sup-
ported by the prefatory extrinsic facts, or that it enlarges their
meaning, or alters them, or substitutes other words in their
place, is a defective statement of the case on the face of the
pleading, and, under the old system, could be taken advantage
of by a special demurrer. Under the Code, as demurrers to
complaints are abolished as a remedy for any formal defect,
except for the improper joinder of causes of action, it can, I
presume, be taken advantage of only by motion—as the defend-
ants have endeavored to do in the present instance.

But are the passages in the complaint, to which the defend-
ants take objection, innuendoes in the proper sense of the term?
Nothing is more certain, now, than that it is the province of
the jury to determine the *meaning of the libel;* it is merely the
duty of the court to define what constitutes it, referring to the
jury the consideration of the particular publication, and allow-
ing them to say whether it is comprised within that definition
or not. If this is so, assuredly allegations in the complaint,

that the publication imputed certain crimes to the plaintiff—in other words, asserting the meaning of the words complained of, is only asserting a fact, the truth or falsehood of which the jury have to decide.

The passages which the defendants move to have stricken out are obviously not inserted for the purpose of explaining extrinsic facts previously set forth in an inducement, or for the purpose of connecting the offensive words with those facts. This would be a question of form exclusively for the consideration of the court, but they are an asseveration of the import of the publication itself, which, if the plaintiff is right, constitutes the injury for which he demands redress. The passages there sought to be stricken out, present the precise points upon which the jury are to pass. In short, although bearing the semblance of inuendoes, they are allegations of issuable facts, founded, according to the theory of the plaintiff, upon the matter contained in the published article set forth in the complaint.

Motion denied, without costs.