### Joel Holton *v.* Benjamin Muzzy.

#### *Slander.   Pleading.*

When a declaration for slander contains more than one count, and each count sets forth a distinct and separate slander, if either of the counts alleges words which are not of themselves actionable, the declaration must allege some special damage as resulting from those particular words; otherwise such count will be held bad on general demurrer.

In this case, the first two counts alleged a slander in regard to the sale of intoxicating liquor by the plaintiff, and the other counts alleged slanderous words imputing adultery, etc.   The declaration contained no allegation of special damages, as resulting from the words charged in the first and second counts; but at the close of the declaration, there was an allegation of general damages, resulting from "the aforesaid grievances" and "by reason of the premises;" and also an allegation that the plaintiff had been subjected to a prosecution for the violation of the law of 1852, prohibiting the sale of intoxicating liquor.   *Held,* on general demurrer, that the damage occasioned by such prosecution was not such a natural and immediate consequence of the slander alleged in the first and second counts, as would justify the court in referring it to those counts in the absence of an allegation attributing it to the particular slanderous words charged therein.

The defendant's second plea justified the alleged slanderous words which charged the plaintiff with the sale of intoxicating liquor contrary to law, by setting forth several distinct sales of intoxicating liquor by the plaintiff. *Held,* that this plea was not sufficient, on general demurrer, because it did not allege that such sales were contrary to the laws of this state.

When a declaration for slander contains several counts, each setting forth a distinct and separate slander, each count must be perfect in itself, and the omission of a material statement in one count can not be supplied by a reference therein to another.

Thus, the absence of a *colloquium,* showing by extrinsic matter that the words charged are actionable, is not supplied by an *innuendo* attributing to those words a meaning which renders them actionable.

A plea of justification in slander must be an answer to the *exact* charge imputed by the alleged slanderous words.   Thus, a count, declaring upon words charging the plaintiff with having begotten a bastard child, and thereby having committed adultery with the child's mother, is not answered by a plea of justification alleging adulterous intercourse on the part of the plaintiff with the mother of the bastard.

This was an action on the case for slander in six counts.   The first and second counts set forth the words complained of as having been spoken by the defendant of and concerning the plaintiff and

his profession of physician and surgeon as follows : " I will bet you (meaning the said Abijah Muzzey and other persons with whom the defendant was then and there conversing) anything that the doctor (meaning the plaintiff) sells liquor, (meaning spirituous and intoxicating liquor) any temperance man can get it there, sir, (meaning that any man who pretended to be opposed to the use of intoxicating drinks for drinking purposes, could then purchase and procure of the plaintiff spirituous and intoxicating liquors, and that the plaintiff had sold and furnished, and was then ready to sell at his residence in said Jamaica, to divers persons, and in large and divers quantities, spirituous and intoxicating liquors for purposes not necessary in the business, art, or profession of the plaintiff, and against the laws of this state)."

The third count was as follows : " And the plaintiff further says, that on the first day of November, 1854, at Jamaica aforesaid, in a certain other discourse, which the defendant then and there had with one William Sanders, and other good and worthy citizens of this state, of and concerning the plaintiff, and of and concerning one Esther Johnson, a single woman, who a short time previous thereto had been delivered of a bastard child, and of and concerning a certain suit or prosecution in favor of the overseer of the poor of said Jamaica against this plaintiff, in which suit or prosecution the plaintiff there was charged with having begotten said bastard, *he the said plaintiff, then and at the time of the begetting of said bastard being a married man* ; the said defendant, with the malicious contrivance and intention aforesaid, and for the several purposes aforesaid, and to cause to be believed that the plaintiff had been guilty of adultery, and to expose him to the pains and penalties prescribed by law for the punishment of adultery, did falsely and maliciously utter, speak, and publish of and concerning the plaintiff, so being a married man as aforesaid, these other false, scandalous, malicious, and defamatory words following, that is to say, what do you (meaning the said William Sanders) mean, you and your family, (meaning the family of said William) taking up against the town and Esther, (meaning said Esther Johnson) in favor of the doctor, (meaning the plaintiff) Esther is a sister of your (meaning William's) wife, (meaning and referring to said suit or prosecution in favor of the overseer of the poor of Jamaica

against the plaintiff) it will injure her (meaning said Esther) and the town, (meaning said town of Jamaica) but it will make no difference, for we can break you all (meaning the said William and his family) down, (meaning that the defendant and those engaged in prosecuting said suit could destroy and discredit the testimony and influence of the said William and his family in whatever they might say, do or testify in favor of this plaintiff in the prosecution aforesaid) you may depend upon it, sir, you (meaning the said William) and every body else well know that the doctor (meaning the plaintiff) is guilty, (meaning that the plaintiff was guilty of begetting said bastard, and of the crime of adultery)."

The fourth count was stricken out and abandoned by the plaintiff.

The fifth count was as follows: " And the plaintiff further says, that on the first day of December, 1853, at Jamaica aforesaid, in a certain other discourse, which the defendant then and there had in the presence of said Amos Howard and other good and worthy citizens of this state, of and concerning the plaintiff, he the said plaintiff, then and for a long time before, and at the time of the misconduct hereinafter mentioned to have been charged and *imputed to him by the defendant, being a married man,* and of and concerning one Esther Johnson, the said defendant, with the malicious intention aforesaid, and for the several purposes aforesaid, did falsely and maliciously utter, speak, and publish of and concerning the plaintiff, so being a married man and physician and surgeon as aforesaid, these other false, scandalous, malicious and defamatory words following: that is to say, the folks up west (meaning in the west part of said Jamaica) said the doctor (meaning the plaintiff) and Esther, (meaning said Esther Johnson) were riding together (meaning that they were riding along the highway together) and the doctor (meaning the plaintiff) hitched his horse, and he (meaning the plaintiff) and Esther (meaning the said Esther Johnson) went into the woods together, (meaning and insinuating that the plaintiff left his horse and carriage in the highway, and left said highway and went into a secluded place in the woods with said Esther, with the purpose of having illicit intercourse and carnal connection, and that the plaintiff then and there did have illicit and carnal connection with the said Esther and with her did commit the crime of adultery.")

The sixth count was substantially the same as the fifth.

None of these counts contained in themselves any allegation of damage, but at the close of the sixth count the declaration contained the following words: " By means of the committing of which said several grievances by the said defendant, as aforesaid, the said plaintiff hath been and is greatly injured in his good name, fame and credit, and also greatly injured in his said profession and business, and brought into public scandal, infamy and disgrace with and among all his neighbors and other good and worthy citizens of this state and of the United States, inasmuch that divers of those neighbors and citizens to whom the innocence and integrity of the plaintiff in the premises were unknown, have on account of the committing of said grievances by the said defendant, as aforesaid, from thence hitherto suspected and believed, and still do suspect and believe the said plaintiff to have been guilty of the crimes and misconduct imputed to him as aforesaid by the defendant, and by reason of the committing of the grievances aforesaid by the defendant, from thence hitherto wholly refused and still do refuse to have any transaction with the plaintiff in the way of his said profession and business, as they before were accustomed to have and otherwise would have had, or to have any acquaintance or discourse with the plaintiff. And by reason of the premises the plaintiff hath been greatly vexed, harrassed, oppressed and impoverished, and has lost and been deprived of great gains and profits which would otherwise have arisen and accrued to him in his said profession and business, and otherwise. And the plaintiff hath been subjected to a prosecution under the act of this state, passed November 2, 1852, entitled " an act to prevent traffic in intoxicating liquors for the purpose of drinking," and to the seizure of certain spirituous liquors, alcohol and wines, which were procured and kept by him solely for purposes connected with his profession, art and business, and hath been put to great expense in successfully defending against said prosecution, in the deprivation, deterioration, evaporation, and loss of the liquors so seized as aforesaid, to wit, the sum of three hundred dollars, to wit, at Jamaica, aforesaid. And the plaintiff, by means of the premises hath been, and is otherwise much injured and damaged therein, to wit, at Jamaica, aforesaid."

The defendant pleaded, first, the general issue, second, a justification of the words alleged in the first and second counts, by alleging

several distinct sales of intoxicating liquor by the plaintiff to divers persons, giving their names, in none of which allegations, however, was it stated that said sales were contrary to the laws of the state.

The third plea was to the first and second counts, and was as follows: " And for a further plea as to the speaking and publishing of the words in the first and second counts of the said declaration mentioned above, supposed to have been spoken and published by the said Muzzy of and concerning the plaintiff, he the said Muzzy by leave of the court, here first had and obtained, saith that the plaintiff ought not to have or maintain his said action against him, the said Muzzy, because he saith that before the speaking and publishing of the several words in the said first and second counts of the said declaration mentioned and above supposed to have been spoken and published by the said Muzzy of and concerning the said plaintiff, or of any of them, to wit, on the first day of December, 1853, the said Holton purchased and procured a large quantity of spirituous and intoxicating liquors, to wit, ten gallons of brandy, ten gallons of gin, twenty gallons of Rum, and twenty gallons of alcohol, and a large quantity of vinous liquor, to wit, ten gallons of wine.

And to wit, on the first day of June, 1854, the said Holton purchased and procured other large quantities of spirituous and intoxicating liquors, to wit, ten gallons of brandy, ten gallons of gin, ten gallons of rum and ten gallons of alcohol, and other large quantities of vinous liquors, to wit, ten gallons of wine, which said intoxicating, spirituous and vinous liquors, the said Holton kept at his residence in said Jamaica, for purposes and in quantities not necessary in his said art, business, calling, or profession, but to sell and furnish, and which he did sell and furnish to divers persons, in divers quantities, contrary to the laws of this state. Wherefore, he the said Muzzy, at the said time, when, etc., did speak and publish of and concerning the plaintiff, the said several words in the first and second counts of the said declaration mentioned, and thereby above supposed to have been spoken and published by the said Muzzy of and concerning the plaintiff, as he lawfully might for the causes aforesaid, and this the said Muzzy is ready to verify.

Wherefore, he prays judgment if the said Holton ought to have or maintain his aforesaid action against him, etc."

Holton *v.* Muzzy.

The fourth plea justified the words alleged in the third count, because " before the speaking and publishing of the several words in the third count of the said declaration mentioned, and above supposed to have been spoken and published by the said Muzzy, of and concerning the plaintiff, or any of them, to wit, on the 10th day of March, 1853, at Jamaica, aforesaid, the said plaintiff did conduct himself in a lewd and lascivious manner towards and with the said Esther Johnson, an unmarried woman, then resident in Jamaica, and did then and there have carnal connection and· illicit intercourse with the said Esther."

The defendant demurred to the fifth and sixth counts. The plaintiff joined issue on the first plea, and demurred to the second, third, and fourth pleas.

The county court,—UNDERWOOD, J., presiding,—adjudged the fifth and sixth counts of the declaration insufficient, and the second, third and fourth pleas sufficient. Exceptions by the plaintiff.

*P. T. Washburn,* for the plaintiff.

The *fifth count* is sufficient. The intent is alleged to have been to injure the plaintiff and to cause it to be believed that he had committed the crime of adultery. The *colloquium* is of and concerning the plaintiff being a married man, and of and concerning one Esther Johnson. The *words* are that folks up west said that the plaintiff and Esther were riding together, and the plaintiff hitched his horse and he and Esther went into the woods together. And the *innuendo* is, that thereby the defendant meant that the plaintiff then, in the woods, had illicit intercourse with Esther, and with her committed the crime of adultery.

The defendant *may* have intended this by these words; and whether he did so intend, is to be determined not merely by the words themselves, but by the manner in which he used them, their connection, and what the defendant intended. It is the office of an innuendo to allege this, and the jury are to determine whether it is truly alleged. If such might by possibility have been the intent, the court can not, as matter of law, hold the declaration defective. *Smith* v. *Miles,* 15 Vt. 249 ; *Nichols* v. *Packard,* 16 Vt. 86.

The sixth count is substantially the same with the fifth, and its sufficiency must depend upon the same principles.

Holton *v.* Muzzy.

The *second and third* pleas are defective. The words charged in the declaration impute a crime. The pleas attempt to justify, by averring that a crime has been committed by the defendant, and the same crime which was charged. The defendant must therefore state in his pleas every thing essential to the commission of the crime, with the same particularity that would be required in an indictment for the same offence. In this view, the pleas are defective, in not averring that the defendant sold and furnished *spirituous liquors " without authority,"* or *not having a license therefor,* nor being agent, within the terms of the statute.

The allegation that the plaintiff was such agent, was not required in the declaration; because an agent may commit the crime, if he sell for purposes other than those specified in the statute; and the words impute that if then the defendant would justify, he must plead either that the plaintiff was not agent, or that being agent, he exceeded his license. The words *" contrary to the statute "* are not sufficient or equivalent. They do not comply with the form given, nor negate, as the defendant must, the specific power which might justify the very acts of selling and furnishing, which he charges. The facts alleged must show a case against the statute, in order to sustain these words; *State* v. *Sommers,* 3 Vt. 156; *State* v. *Munger,* 15 Vt. 290.

The statute form applies only to the case of a prosecution under the statute acts of 1852, p. 26, § 18.

That part of the *fourth plea* which avers that the plaintiff had illicit intercourse with Esther, is bad. The words charge that the plaintiff did beget the bastard, and did thereby commit adultery; *Peake* v. *Oldham,* Cowp. 275. The plea does not aver that the plaintiff *begat the bastard,* and is therefore bad, for not justifying the very fact charged. The time is immaterial; and under this plea, the defendant may give evidence of illicit intercourse any number of years previous to the begetting of the bastard; *Torry* v. *Field,* 10 Vt. 353, 408; *Skinner* v. *Grant,* 12 Vt. 462.

And as a charge of adultery, the plea is bad, in not averring that the plaintiff was a married man, having a wife then living. The plea does not refer to the declaration, and cannot be aided by it; and it is also bad in not averring *" carnaliter cognovit."*

The other part of this plea is clearly insufficient.

Holton *v.* Muzzy.

*Butler & Knowlton* and *Stoughton & Grant*, for the defendant.

1. The words charged to have been spoken in either of the counts are not actionable in themselves, for they do not necessarily impute to the plaintiff the commission of any crime for which corporeal punishment could be inflicted.    Starkie on Slander 41; *Billings* v. *Wing*, 7 Vt. 439; *Ogden* v. *Turner*, 6 Mod. Cas. 104.

2. The fifth and sixth counts are both defective, because the extrinsic matter, necessary to render the words charged actionable, is not given in those counts, but if any such matter is to be inferred it is only by a reference in said counts to former counts in the declaration, which former counts refer to a distinct conversation with other persons and at a different time than that referred to in the fifth and sixth counts.    In a declaration for slander, each count should be sufficient of itself to sustain an action without reference to the rest of the declaration.

There is nothing in the bare fact that the Doctor and Esther went into the woods together that necessarily implies the commission of adultery by them.    Consequently the language imputed to the defendant by the fifth and sixth counts is not slanderous unless it appear that it became so by reason of the connection it had, either with other things said, or circumstances that occurred.    It should have been averred in the *colloquium* that there was a rumor, suspicion or belief among the inhabitants of the west part of the town, that the plaintiff and Esther had had criminal intercourse together in the woods, where they went when riding or coming together upon the highway, and that the language of the defendant was concerning such rumor, suspicion or belief, to justify the interpretation put upon the language by the *innuendo.   Ryan* v. *Madden*, 12 Vt. 51.

The *innuendo*, indeed, puts a very liberal construction upon the words, but its averments are neither warranted by the colloquium nor the words themselves.    It introduces new matter; it enlarges and extends the meaning of the words beyond their natural and necessary import; it attempts to render words actionable which are not so of themselves nor made so by the *colloquium ;* it attempts to supply the place of a *colloquium.*    But such is not the office of an *innuendo.*    There is a material distinction between an *induce-*

*ment, introduction* or *colloquium* and an *innuendo*. By the aid of a proper colloquium, words which do not themselves import the commission of a crime may be made actionable, but never by an *innuendo*, which is only a word of explanation, and never of extension and addition. It means no more than *id est., scilicet* or *videlicet*. *Fitzsimmons* v *Cutler*, 1 Aiken 33 ; *Taft* v. *Howard*, 1 Danl. Chip. 275 ; *Ryan* v. *Madden*, 12 Vt. 51 ; *Holt* v. *Scholefield*, 6 Term 691 ; *Hawkes* v. *Hawkey*, 8 East 431 ; 4 East 483 ; *Wood* v. *Scott*, 13 Vt. 42 ; *Saunderson* v. *Hubbard*, 14 Vt. 462 ; *Nichols* v. *Packard*, 16 Vt. 83 ; *Mason* v. *Mason*, 4 N. H. 110 ; *Harris* v. *Burley*, 8 N. H. 256 ; Starkie on Slander, 285 ; 1 Chit. Plead. 403–407.

3. The words alleged to have been spoken in the third count are not in themselves actionable. They impute no crime. What extrinsic fact is alleged, to which the words refer, which can make them objectionable ? Certainly not the fact alleged *argumentively* that said Esther had been delivered of a bastard child, begotten by the plaintiff, for begetting a bastard is no crime, and even if it were, it is not alleged that the words were *spoken of and concerning that fact*. See *Hawkes* v. *Hawkey*, 8 East. 427, 4 East. 483–485 ; *Fowles* v. *Robbins*, 12 Mass. 499 ; *Bloss* v. *Tobey*, 2 Pick. 328.

Then what is the fact alleged in reference to which the words spoken would impute a crime ? Begetting a bastard, as we have already shown is no crime. If a married man has illicit intercourse with an unmarried woman, and begets a child, it is not the begeting of the child, but the carnal knowledge or illicit intercourse which constitutes the crime. Hence it will be seen that the declaration must not only allege that the plaintiff begot the child, but that he was a married man. Then if any crime is imputed, it is none other than the crime of adultery.

If, then, the extrinsic facts, and the words alleged, impute to the plaintiff the crime of adultery, which is all the plaintiff can claim, then the question arises, what facts specially pleaded would constitute a defence to this count in the declaration.

If a man charge another with the commission of a crime and is sued for it in slander, he has but to plead in justification the truth of the charge. 1 Black. Com. 125 ; *Skinner* v. *Grant*, 12 Vt. 456.

The slander laid in the third count, is that the defendant charged the plaintiff with having committed the crime of adultery with Esther Johnson. The plea of justification should conform with the slander laid. Chitty's Pleading 494. Hence it is only necessary in the case at bar, to allege that the plaintiff was guilty of the crime of adultery with the said Esther.

It is specially alleged in the plea to this count (see fourth plea) that before the speaking of the several words in the third count in said declaration mentioned, to wit: on the tenth day of March, 1853, at Jamaica, the said plaintiff, did then and there have carnal connection and illicit intercourse with the said Esther. " Wherefore the said Muzzy, at the said time, when, etc., did speak and publish of and concerning the plaintiff the said several words in the third count of the declaration mentioned," etc.

We say therefore, that the plea contains a full and perfect justification of the slander alleged in the third count.

The opinion of the court was delivered by

BARRETT, J. Without making any minute criticism of the first two counts, for obvious reasons, we think they cannot be sustained. The words charged, are not, in themselves, actionable. If they are to be made so, it must be in virtue of the special damage, alleged to have accrued therefrom. We think these counts are seriously defective in this respect. The declaration does not aver what special damage has accrued from the speaking of those words. The *five* counts in the declaration cover *three* distinct and different causes of action. The *first* and *second* counts cover the words charging the selling of liquor; the *third* count covers the charging of adultery in begetting the bastard; the *fifth* and *sixth* counts cover the charging of the going into the woods, etc. The *general*, as well as the *special* damage is averred as resulting from *all the premises*, without any designation as to what particular damage resulted from the words charged in any particular count. It is a familiar rule that the special damages claimed must be averred as resulting from the particular wrongful act, from which they are claimed to flow. The case stands on different ground from what it would have stood if the several counts had covered only a single cause of action.

Holton *v.* Muzzy.

To the claim, that under a general demurrer the court may select and assign to the first two counts, such of the special damage averred, as is appropriate thereto, it is a sufficient answer that the *special damage* of being prosecuted for a violation of the liquor law of 1852, does not seem to be that "*mere natural and immediate consequence of the wrongful act*" of the defendant, that the rule of law upon this subject contemplates and requires. See Starkie on Slander 120, ed. of 1832.

But were these counts to be held sufficient, we think the defendant's third plea is a sufficient justification. It seems to cover the precise offence which the counts allege, that the defendant charged upon the plaintiff. This, we understand, answers in full the rule of pleading applicable to the subject.

The second plea is insufficient in not alleging the several acts of sale and furnishing to have been contrary to the laws of the state.

The fifth and sixth counts are obviously defective. It is conceded in argument that they need the aid, by way of reference, of material portions of the former counts. We are not prepared to say, that, if the former counts were for the same cause of action as the fifth and sixth, the latter counts might not receive such aid. These two counts, considered by themselves, seem to be defective in the matter of the *colloquium.* In order to render the speaking of the words actionable, the *colloquium* must perform an important office outside and beyond the province of the *innuendo.* Now, it is quite obvious, that the *colloquium* in the third count cannot be incorporated by reference into the fifth and sixth counts for the very plain reason that the subject matter of it, as well as the persons with whom, and the time when it occurred, are entirely different from what are indicated in these respects in the fifth and sixth counts.

Then, again, the reference to former counts is general, and in no way indicates to which of them it is made. It leaves the court to look into the pleading, and assort the particular parts of the several foregoing counts, and appropriate such parts as may be applicable and necessary, in order to perfect the needy counts. We think this would be rather *extra judicial* labor, and altogether more within the appropriate business of the pleader to anticipate and render unnecessary than it is within the duty of the court to assume.

---

---

The third count we deem sufficient both in matter and form. The *colloquium* properly developes the subject and occasion of and concerning which the words charged were spoken, and the intent with which they were spoken. The words themselves, as properly explained by the *innuendos*, are actionable beyond all question They clearly impute the crime of adultery. In order to hold otherwise, we must close our minds against the clearest natural import of the words themselves, and disregard the most common and obvious rules of law bearing on the subject.

But to this count a plea of justification is interposed to which there is a general demurrer.

We are unable to take any view of this plea that would justify us in holding it to be sufficient. It lacks an indispensable feature, viz: an answer to the charge imputed by the slanderous words. That charge is specific, viz: the having begotten the bastard child, and thereby committed the crime of adultery.

That is the charge to be justified. The plea is, that *before the speaking of the words, to wit, on the* 10*th day of March, A. D.,* 1853, *the plaintiff did conduct himself in a lewd and lascivious manner towards and with the said Esther Johnson, an unmarried woman, and did then and there have carnal connection and illicit intercourse with the said Esther.* An issue of fact taken on that plea, would not confine the defendant to proving an act of intercourse by which the bastard was begotten. The very idea of a justification, in virtue of the truth of the words, implies that the party, by his plea, shall put in issue the very fact which his words charge. This is according to, and required by, the first principles of pleading, and at the same time it but answers the obvious ends of justice.

It would be a strange anomaly if a plea of justification should be diluted into a kind of *common count,* permitting a range of proof bounded, in point of time, only by the statute of limitations, and covering any act of illicit intercourse within that time, whether a bastard was thereby begotten or not. It is needless to cite the books on this point, for no one could be opened which treats of the subject, that would not show the impropriety and insufficiency of of this plea.

The rule, as stated by Judge REDFIELD, in *Torrey* v. *Field,* 10

Vt. 408, is the true one, and is conclusive against this plea.

The judgment of the county court, holding this plea to be sufficient, is therefore reversed, and the judgment is, that said plea is insufficient.

The general issue being pleaded, the cause is remanded to the county court for trial.