WEED *vs.* BIBBINS.

32 315
59h 238

In an action for slander, the innuendo cannot enlarge the meaning of the words spoken beyond the averment of the intention by which the speaking of the words is introduced, where the words themselves are ambiguous, and do not necessarily impute crime.

Where a complaint, in an action for slander, alleged that the plaintiff was the widow of E. W., deceased, who died leaving considerable property, real and personal, which he bequeathed to the plaintiff and his infant son; that after her husband's death the plaintiff was delivered of a male child, who was the son of E. W., and his only heir and next of kin; that after the birth of such child, the defendant, intending to injure the plaintiff, &c., and to cause it to be believed that she, the plaintiff, had produced a false and pretended child and heir of E. W., charged her with having got a "bogus baby"—"a bogus baby to get W.'s property"—styling it "another Cunningham affair—another bogus baby—a sham to get W.'s property," &c.; thereby charging and intending, and meaning to charge the plaintiff with having been guilty of the crime of fraudulently producing an infant, and falsely pretending it to have been born of parents whose child would be entitled to a share of personal estate, and to inherit real estate, with the intention of intercepting the inheritance of such real estate, and the distribution of such personal property from the persons lawfully entitled thereto; *Held* that although the words spoken did not necessarily impute a crime, yet, when looked at and understood in the light of the introductory averment, and the innuendo, a criminal offense was clearly imputed to the plaintiff, by the defendant.

*Held also,* that evidence showing what was generally understood by "the Cunningham affair" was improperly admitted. That the question of the meaning of the language employed, and of the intention of the defendant in using it, was a question for the jury, upon the whole case, and not a matter to be established by the opinion or understanding of any witness, or number of witnesses.

*Held further,* that under an answer properly setting up the defense, in mitigation of damages, the defendant had a right to prove that at, and before, and after the time when, according to the natural laws, the said child was begotten, the physical state and condition of the plaintiff's husband was so prostrated, feeble and infirm as to deny to him the physical power and ability to beget a child.

APPEAL from a judgment entered upon the verdict of a jury, after a trial at the circuit. The action was for slander. The complaint alleged that on the 20th day of December, 1849, the plaintiff was duly and lawfully married to Elihu Weed, of Weedsport, now deceased, and continued

to be his lawful wedded wife from that time until the 6th day of February, 1859, when the said Elihu Weed departed this life, and since that time she has continued to be, and now is, the widow of the said Elihu Weed, deceased. That the said Elihu Weed and the plaintiff had neither of them ever been married to any other person, until they were so married to each other at the time aforesaid, and from that time until the time of the death of the said Elihu Weed, he and the plaintiff lived and cohabited together as husband and wife. That the said Elihu Weed was a man of considerable wealth, consisting of both real and personal property; and that in the month of June, 1858, he made, published and declared his last will and testament, in and by which he devised and bequeathed his property, both real and personal, to the plaintiff and the infant son of the said Elihu Weed, and the plaintiff, hereinafter mentioned, and appointed the plaintiff sole executrix of his said last will and testament, and died at the time aforesaid without having made any other will, or in any other manner revoked or annulled the same, or made any codicil or addition thereto; and that the plaintiff was informed and believed that there was other property, both real and personal, which had descended or would descend by inheritance to the heirs at law of the said Elihu Weed, deceased. The plaintiff further alleged that on the 31st day of January, 1858, she, the said plaintiff, was delivered of a male child, which was a son of the said Elihu Weed, and which said child was afterwards named Louis Elihu Weed, and he is now living, and is the only heir at law and next of kin of the said Elihu Weed, deceased, and he and the plaintiff are the sole devisees and legatees of the said Elihu Weed, deceased, in and by his said last will and testament. And the plaintiff further averred that she had always been a woman of good name, fame and reputation, up to the time of the speaking of the words hereinafter mentioned and set forth by the defendant. 1. That the said defendant, wickedly contriving and maliciously intending to injure

the plaintiff in her good name, fame and reputation, and to have it understood and believed that she, the said plaintiff, was intending to produce an infant, and pretend that it was born of herself, and the said Elihu Weed, whose child would be entitled to a share of, and would inherit both real and personal estate, and in that manner intercept the inheritance of the said real estate and the distribution of said personal property from the lawful heirs of the said Elihu Weed, who would otherwise have been entitled thereto, and while the plaintiff was with child by the said Elihu Weed, and on or about the 1st day of January, 1858, the defendant, in the presence and hearing of divers persons, said to them, of and concerning the plaintiff, the following false and slanderous words, to wit: "She (the said plaintiff meaning) is playing up Mrs. Cunningham." "I guess she is going to try and get a bogus baby." "Mrs. Weed (the plaintiff meaning) is playing up Mrs. Cunningham, and dressing so as to make people believe she is in a family way." "She (the plaintiff meaning) will bring a child from somewhere else and claim it to be her's." "It is all a sham to get Weed's property." Thereby charging, and intending, and meaning to charge the plaintiff with attempting to produce a false and pretended child as one born of herself, and the said Elihu Weed, and a false and pretended heir of him, the said Elihu Weed, falsely pretending it to be a child of theirs, which would intercept the inheritance of real estate by, and the distribution of personal property to, the heirs of said Elihu Weed, and with feigning pregnancy, and thus attempting to commit the crime of producing a false and pretended heir as aforesaid, to the damage of the plaintiff of one thousand dollars.

2. And the plaintiff further alleged, that afterwards, to wit, on or about the tenth day of February, 1858, at Weedsport aforesaid, and after she had been delivered of a child as aforesaid, the lawful issue of herself and the said Elihu Weed, to wit, the said Lewis Elihu Weed, the said defendant wickedly contriving and maliciously intending to injure the said

plaintiff in her good name, fame and credit, and to cause it
to be believed that she, the said plaintiff, had produced a
false and pretended child and heir of the said Elihu Weed,
said, as the plaintiff is informed and believes, in the presence
and hearing of and to divers good and worthy citizens, of
and concerning the plaintiff, the following false and slander-
ous words: "Mrs. Weed (the plaintiff meaning) has got a
bogus baby." "It (the said child, Louis Elihu Weed mean-
ing,) is a bogus baby." "Mrs. Weed (the plaintiff meaning)
has got a bogus baby to get Weed's property, but they will
knock it higher than a kite." "It is another Cunningham
affair—another bogus baby." "It is a sham to get Weed's
property." Thereby charging, and intending, and meaning
to charge the plaintiff with having been guilty of the crime
of fraudulently producing an infant, and falsely pretending
it to have been born of parents whose child would be entitled
to a share of personal estate, and to inherit real estate, with
the intention of intercepting the inheritance of such real
estate, and the distribution of such personal property from
the persons lawfully entitled thereto, to the damage of the
plaintiff, &c.

Two other counts were withdrawn at the trial. In his
answer the defendant admitted the marriage and cohabitation
of the plaintiff with her husband; that Weed possessed con-
siderable real and personal property; and that the plaintiff
was delivered of a child, at or about the time stated in the
complaint; but denied every other material allegation in the
complaint. And with a view of explaining, mitigating and
extenuating whatever upon the trial might be alleged or
shown against the defendant under the complaint, the said
defendant gave notice that he would aver and prove the fol-
lowing circumstances: The said Elihu Weed was, for the
last three years of his life, of very infirm bodily health, and
of imbecile mind, and pursuant to statute in such case pro-
vided, the defendant having for many years previously been
his intimate friend, was duly appointed and qualified, and

subsequently thereto acted as a committee of his person and estate; and as it was his duty to do, did take and feel a deep interest in the welfare of the said deceased, and in the preservation of his right, and in protecting him from imposition and abuse; that at, and before, and after the time, when according to the natural laws the said child was begotten, the physical state and condition of the said Elihu Weed was, to all human appearance, so prostrated, feeble and infirm, as to deny to him the physical power and ability to beget a child. That the conduct and character of the said plaintiff during the last fifteen years, up to the decease of the said Elihu, and up to the commencement of this action, was at no time beyond suspicion and reproach, and that in common with many good and worthy citizens of the community where the plaintiff and defendant lived during all that time, this defendant was induced by the actions and conduct of the said plaintiff, together with the circumstances and condition of the said Elihu Weed, to believe, and did believe without any malice towards the plaintiff, that the said child was not the child of the said Elihu Weed.

On the trial the plaintiff proved the uttering by the defendant of the words charged. The defendant offered to show, in mitigation of damages, the facts stated in his answer. The court excluded the evidence; and the jury found a verdict for the plaintiff for $1000 damages.

*Cox & Avery,* for the appellant.

*Wm. B. Mills,* for the respondent.

*By the Court,* JOHNSON, J. The motion for a nonsuit was properly denied. The first count is open to the objection that the innuendo attempts to enlarge the meaning of the words spoken, beyond the averment introductory to the speaking of the words. The introductory averment is, that the defendant, contriving and intending to have it understood

and believed that the plaintiff was *intending* to produce an infant, and *pretend* that it was born of herself. The innuendo is, that the defendant meant, and intended, by the speaking of the words, to charge the plaintiff with *attempting* to produce a false and pretented child, as one born of herself and the said Elihu Weed, &c. It is well settled that the innuendo cannot enlarge the meaning of words spoken, beyond the averment of the intention by which the speaking of "the words is introduced, where the words themselves are ambiguous and do not necessarily impute crime." The mere intention to commit a crime, without an attempt by some overt act, is no offense; and had there been no other count, it would seem, by the rules of pleading, that no cause of action would have been alleged, and the nonsuit should have been granted, as no amendment was asked for or allowed. (*Dias* v. *Short*, 16 *How. Pr. R.* 322.)

But the second count is open to no such criticism. In that count the introductory averment and the innuendo are alike, and although the words spoken do not necessarily impute a crime, yet when looked at and understood in the light of the introductory averment and the innuendo, a criminal offense is clearly imputed to the plaintiff by the defendant. "The use of an averment," says Van Ness, J., in *Van Vechten* v. *Hopkins*, (5 *John.* 211,) "is to ascertain that to the court which is generally or doubtfully expressed; so that the court may not be perplexed of whom, or of what, it ought to be understood; and to add matter to the plea to make doubtful things clear." Here the defendant's meaning in using the otherwise doubtful words is made clear to the court by the introductory averment; especially in view of the extraneous fact alleged, to wit, the birth of the plaintiff's child.

But the evidence showing what was generally understood by "the Cunningham affair," was improperly admitted. The question of the meaning of the language employed, and of the intention of the defendant in using it, was a question

for the jury, upon the whole case, and not a matter to be established by the opinion or understanding of any witness, or number of witnesses. (*Van Vechten* v. *Hopkins, supra. Gibson* v. *Williams,* 4 *Wend.* 320.    *Maynard* v. *Beardsley,* 7 *id.* 560.    *Dias* v. *Short, supra.*)

I am of opinion, also, that the evidence offered by the defendant, under the second answer, was improperly excluded. Under the decision of the court of appeals in the case of *Bush* v. *Prosser,* (1 *Kern.* 347,) it seems to me that evidence of the apparent and actual physical condition of Weed, the plaintiff's husband, for a year and more previous to the birth of the child, was clearly competent for the purpose for which it was pleaded and offered.    It was pleaded in mitigation of damages, and the evidence was offered for that purpose.    Had the fact set up in the answer been proved, the obvious tendency of the evidence would have been to disprove, to a certain extent, malice on the part of the defendant, and to establish grounds for a sincere belief in his mind, that any issue springing from the marriage was impossible, and the alleged pregnancy and birth were pretence.    It was offered as a partial defense only, bearing upon the question of damages. I think it falls exactly within the principle established in *Bush* v. *Prosser,* and that the evidence should have been received.    What weight it was entitled to, and what influence it should have, upon the measure of damages, were questions for the jury to determine.    It follows that there must be a new trial, with costs to abide the event.

[Monroe General Term, September 3, 1860.  *Smith, Knox* and *Johnson,* Justices.]