[Filed March 29, 1892.]

## OLIVER H. COLE v. HENRY NEUSTADTER ET AL.

LIBEL—DEFINITION.—Libel may be defined to be a malicious publication in writing, signs, or pictures, imputing to another something which tends to injure his reputation, to disgrace or degrade him in society, and to lower him in the esteem and opinion of the world, or to bring him into public hatred, contempt, or ridicule.

PLEADING—LIBEL—INNUENDO.—An innuendo serves to explain precedent matter, but never to establish a new charge or enlarge or change the sense of previous words.

Multnomah county: E. D. SHATTUCK, Judge.

Plaintiff appeals. Affirmed.

This is an action to recover damages for libel. The question presented arises on the sufficiency of the complaint, which is given entire, as follows: "The plaintiff, by leave of the court in that behalf first had and obtained, now makes and files this his second amended complaint, and against the defendants above named complaining, for cause of action alleges: That at and during all the times in this complaint mentioned, the defendants Henry Neustadter, Jacob H. Neustadter, Sigmund Feuchtwanger, and Isaac Oppenheimer, were and still are co-partners doing business under the firm name and style of Neustadter Brothers, and were and are extensively engaged in the wholesale dry goods business in the city of New York, state of New York, and in the city of San Francisco, state of California, and in the city of Portland, state of Oregon, and throughout the states of California, Oregon, Washington, and Idaho, and have and maintain branch houses for the conduct of their said business in each of the cities above named; and have paid and will pay large sums of money annually for insurance of their property against loss by fire, a portion of which moneys have heretofore been paid to insurance companies with which this plaintiff has and had business relations, as hereinafter more particularly stated; and that at and during all the said

times the defendant Bernhard Neustadter was and still is the duly appointed and acting manager at Portland, Oregon, for the said firm of Neustadter Brothers.

"That for more than seven years last past the plaintiff has been and still is engaged at Portland, Oregon, and elsewhere throughout the states of Oregon, Washington, Idaho, and Montana, in the business of adjusting losses by fire to property covered by insurance; and as such has been employed by various fire insurance companies engaged in insuring property against loss by fire in said states, and in the state of California, and elsewhere; and that during all of said time the business of plaintiff has been and still is that of an adjuster of fire losses. That during said time the plaintiff has been employed as such adjuster by the Liverpool, London & Globe Insurance Company, the North British & Mercantile Insurance Company, the German American Insurance Company, the New Zealand Insurance Company, and by various other insurance companies engaged in said business in said places; that the said business of plaintiff, for its successful operation, required peculiar skill and a thorough knowledge of the business of fire insurance, which are only acquired by long and careful study thereof, and which skill and knowledge this plaintiff has at all of said times possessed, and still possesses.

"That plaintiff is and during all the times herein mentioned has been a person of good repute, and during all said time has maintained and still maintains among fire insurance companies and among those engaged in the fire insurance business on the Pacific Coast and elsewhere, and particularly among the people of the city of Portland, where this plaintiff has during all said time resided, and still resides, a reputation for skill, ability and good judgment, and honesty and integrity in the conduct of his said business, and in the performance of the duties of his said employment; and has, by his fidelity and skill, and the

faithful and diligent discharge of his duties and obligations devolving upon him by reason of his said employment, gained and secured the confidence and esteem of those by whom he has been employed, and of the people in general throughout the said states; and had thereby established for himself in said states a large and profitable business in the adjustment of fire losses, which has heretofore and prior to the commission of the acts by the defendants, as hereinafter complained of, yielded to plaintiff large profits; and which business and the profits thereof would reasonably increase in the future; and that plaintiff was in the full enjoyment of the said reputation and the benefits thereof at the time of the commission of the acts hereinafter complained of by the defendants herein.

"That the continued success and increase of the said business and the profits thereof depend solely upon the retention by plaintiff of the said reputation and the good will and esteem of those with whom he has had business relations, and of the public in general.

"That by reason of the large business done by the defendants Neustadter Brothers, and the extensive business relations existing between them and other business houses and firms in the states above named, the said defendants are able to and do control the placing of a large amount of risks of fire insurance, in addition to the risks carried by them on their own property, by reason whereof their good will and influence are of great pecuniary value; that all the aforesaid facts were at all of the times herein mentioned well known to the defendants herein.

"And plaintiff further says, that on and prior to the date of the fire hereinafter mentioned, to wit, on the fifth day of December, 1890, the firm of Le Lee & Co., being the same persons referred to in the letter hereinafter set forth, were the proprietors of a retail dry-goods store and business in the said city of Portland, and that their goods and property in said store were insured against loss or

XXII OR.—13.

damage by fire in the following fire insurance companies,
to wit: The Liverpool, London & Globe Insurance Com-
pany, the Norwich Union Fire Insurance Society, and
the Commercial Insurance Company; and that on the said
date a fire occurred whereby a partial loss to the said goods
was suffered; that thereupon this plaintiff was employed
by the insurance companies above named to adjust said
loss; and that thereafter, and under and by virtue of
the provisions of the policies of insurance covering said
loss, one Victor Stedaker was appointed by said insurance
companies, and one Strauss appointed by said insured, and
the two so appointed selected one Daniel McAllen, the
three so selected to act as appraisers of said loss, and to
adjust the same between the said insurance companies and
said insured; and that the said appraisers at once assumed
the duties of their appointment; and in connection with
this plaintiff as such adjuster proceeded to settle and
determine the amount of said loss, with the full assent and
concurrence of the said assured and of said insurance
companies interested; that while they were so engaged the
defendant Bernhard Neustadter, unwarrantly and without
any right whatever, attempted to interfere with the said
appraisers in the adjustment of said loss, and undertook to
influence their decision therein; and that this plaintiff
then politely but firmly informed him that he would not
be permitted to do so; that the defendants Neustadter
Brothers were creditors of said firm of Le Lee & Co., and
that one of the clerks of said Neustadter Brothers was
employed by said Strauss as his clerk in making said
appraisal and adjustment of said loss; that after the items
of said loss had been written in the books of said appraisers
and had been checked off, and before the same had been
added up or said appraisal finally made, and on the six-
teenth day of December, 1890, the said defendant Bernhard
Neustadter came to the office of the plaintiff in the city of
Portland, Oregon, and without right, and impertinently

inquired of this plaintiff what he, plaintiff, was going to do about the adjustment and appraisal of said loss; and that thereupon this plaintiff said to said defendant: 'Mr. Ben. Neustadter, I have had one or two interviews with you in regard to this matter, (meaning the adjustment of the said loss,) and I don't want any more of your damned interference in this case. Do you understand?' Whereupon the said defendant replied that he thought he did, and withdrew from said office; and that the above was the only conversation between the plaintiff and said defendant, and that said language was the language referred to in the letter hereinafter mentioned.

"And plaintiff further says that thereafter and on the eighteenth day of December, 1890, at Portland, Oregon, and at San Francisco, California, and elsewhere, the said defendants falsely, maliciously and wrongfully, and with intent to bring obloquy on the plaintiff, and to bring him into contempt and ridicule, and to damage and injure him in his good name and business and social standing, and his reputation, and to diminish the esteem in which the plaintiff was held by those with whom he did business and the public in general, and to cause this plaintiff to be discharged from his said employment, and to prevent others from employing him in the future, and to deprive plaintiff of the profits and increase of said business, and to destroy said business and to cause the ruin of plaintiff, did compose, write, and publish of and concerning this plaintiff in his said business, employment and calling, the following false, defamatory, and libelous matter, that is to say:

"'NEUSTADTER BROTHERS.

"'PORTLAND, Oregon, December 18, 1890.

"'*Liverpool & London & Globe Insurance Company, Mr. G. Rosenblatt, Agent, City*—DEAR SIR: The insulting remarks offered to our representative manager, Mr. B.

Neustadter, by your adjuster, O. H. Cole, at his office, in the matter of Le Lee & Co., warrant us to withhold any new business from your local agent here.

     "'Yours respectfully,

(Signed.)              "'NEUSTADTER BROTHERS.'

"That the above letter was sent to and received by the agent of said Liverpool, London & Globe Insurance Company at said Portland, Oregon, and at San Francisco, California, and a letter similar thereto in all respects, save the address, was at the same time sent to and received by the agents at Portland, Oregon, and at San Francisco, California, of the Commercial Fire Insurance Company and the Norwich Union Insurance Company aforesaid; and was also sent to and received by divers other persons and insurance companies both at Portland, Oregon, and San Francisco, California, the names of whom are unknown to this plaintiff; and that by reason of the publication thereof as aforesaid, the same has come to the knowledge of divers and sundry other persons and companies with whom the plaintiff had business relations, and by whom plaintiff was well and favorably known, but the names of whom this plaintiff is not now able to state; and that the defendants meant and intended by said letter to impute to this plaintiff lack of business ability and skill necessary to properly conduct his said business, and to adjust said loss and to transact said business of an adjuster of fire losses, and lack of honesty and integrity in his said business, and that plaintiff was not a fit, proper or competent person to be employed in said business, and that if the plaintiff was so employed in the future the defendants would withhold all business and patronage of their own and such business and patronage as they could control from any and all insurance companies continuing to employ the plaintiff; and that the same was so understood by those by whom it was received and to whose knowledge it came as aforesaid.

"That said matter and said imputations were and are wholly false, untrue, and defamatory, and were and are well known by defendants so to be; that during the time the plaintiff has resided and done business as aforesaid in and about Portland, he has been employed by not less than thirty fire insurance companies as such adjuster, the names of whom are too numerous to state.

"And plaintiff alleges that all of said companies, or nearly so, who had theretofore so employed him, would have continued so to do, had it not been for the said false and defamatory publication; and that in fact the only companies by whom the plaintiff has been employed since the said publication were and are the Liverpool, London & Globe Insurance Company, the New Zealand Insurance Company, the Fireman's Fund Insurance Company, and the Lancaster Insurance Company, and that by reason of the premises, the plaintiff has lost much business and employment which he would otherwise have obtained, and has failed to obtain employment in his said business and calling from those by whom he had formerly been employed except as aforesaid, and from others whose names are unknown to plaintiff, but who would otherwise have employed plaintiff; and that plaintiff has thereby been deprived and will be deprived of such business and employment and the gains and profits thereof and of the reasonable increase thereof which plaintiff would otherwise have enjoyed; and has otherwise been damaged in his business reputation, good name, and social and business standing thereby, and that by reason of the premises the plaintiff has suffered damage in the full sum of five thousand dollars.

"Wherefore plaintiff prays judgment against defendants for the full sum of five thousand dollars, with the costs and disbursements hereof."

The court sustained a demurrer to this complaint on the ground that the complaint does not contain facts sufficient

to constitute a cause of action, from which judgment the plaintiff has brought this appeal.

*J. B. Thompson*, and *L. L. McArthur*, for Appellant.

*Cox, Teal & Minor*, for Respondents.

Strahan, C. J.—There is but one question presented by this appeal, and that is the sufficiency of the complaint. The determination of this question involves a brief examination of the law of libel; but at the threshold we are met by the difficulty that no certain and precise definition of libel, or what constitutes libel, exists. A late writer on the subject says that the attempts which have been made to define libel, or a libel, are so many as to be practically innumerable, yet they have in reality been unavailing; no definition, properly so called, of libel, or a libel, exists. (Towns. Slander and Libel, § 20.) Many of the attempted definitions are collected by this author in a note to section 21.

It is said that a libel is a censorious or ridiculing writing, picture, or sign, made with a mischievous and malicious intent, towards governments, magistrates, or individuals. (*People* v. *Crosswell*, 3 Johns. Cas. 336; *Steele* v. *Southwick*, 9 Johns. \*214; *Cooper* v. *Greeley*, 1 Den. 347.) So it is said to be a malicious publication, in writing, signs, or pictures, imputing to another something which has a tendency to injure his reputation, to disgrace or degrade him in society, and to lower him in the esteem and opinion of the world, or to bring him into public hatred, contempt, or ridicule. (*State* v. *Jeandell*, 5 Harr. (Del.) 475.) Again, it is said that every publication by writing, printing, or painting which charges or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, odious, or ridiculous, is *prima facie* a libel, and implies, malice in the publisher. (*White* v. *Nicholls*, 3 How. 266; *Dexter* v. *Spear*, 4 Mass. 115.) Another case says that a publication, to be a libel, must tend to injure the plaintiff's reputation and expose him to public hatred, contempt, and

ridicule. (*Armentrout* v. *Moranda*, 8 Blackf. *426.) Other cases say a libel is a malicious publication, expressed either in printing or writing or by signs and pictures, tending to either blacken the memory of one dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule. (*Commonw.* v. *Clapp*, 4 Mass. 163; 3 Am. Dec. 212; *Root* v. *King*, 7 Cow. 613.)

It is apparent, from these definitions, that the publication complained of in this case is not libelous *per se*. The argument in this court proceeded on that assumption, and counsel for appellant seemed to concede that unless the alleged libelous matter were in some way aided by the matter alleged by way of inducement, or by the innuendoes, the action must fail. It is the office of the inducement to narrate the extrinsic circumstances, which, coupled with the language published, affects its construction and renders it actionable; when standing alone and not thus explained, the language would appear either not to concern the plaintiff, or if concerning him, not to affect him injuriously. (Towns. Slander and Libel, § 308.) But much of the former prolixity allowed in pleadings in actions for libel and slander is doubtless dispensed with and rendered wholly useless by section 90, Hill's Code, which provides that, in an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, but that it may be stated generally that the same was published of or concerning the plaintiff. But the code has not dispensed with the necessity of inducement or innuendoes where they are necessary to show the defamatory meaning of the words. (*Wallace* v. *Bennett*, 1 Abb. N. C. 478; *Stewart* v. *Wilson*, 23 Minn. 449; *De Witt* v. *Wright*, 57 Cal. 576; *Blaisdell* v. *Raymond*, 14 How. Pr. 265; *Wachter* v. *Quenzer*, 29 N. Y. 547; *Carroll* v. *White*, 33 Barb. 615; *Wilson* v. *Fitch*, 41 Cal. 363; *Frank* v. *Dunning*, 38 Wis. 270.)

But in this case, conceding all that is alleged by way of inducement to be true, the writing does not appear to have been defamatory or libelous. It is by the innuendo, taken in connection with the inducement and the alleged libelous matter, that the plaintiff seeks to sustain his complaint. In this class of actions, the ordinary rule undoubtedly is, that the words claimed to be libelous are to be construed according to their ordinary and usual import and meaning. It is only where the meaning is doubtful or equivocal that the pleader may by innuendo point the language to the sense in which he wishes it to be understood. (Towns. Slander and Libel, § 142.)

The libelous words charged are: "The insulting remarks offered to our representative manager, Mr. B. Neustadter, by your adjuster, O. H. Cole, at his office, in the matter of Le Lee & Co., warrant us to withhold any new business from your local agent here."    (Innuendo, "that the defendants meant and intended by said letter to impute to this plaintiff a lack of business ability and skill necessary to properly conduct his said business and to adjust said loss, and to transact said business of an adjuster of fire losses; and lack of honesty and integrity in his said business; and that the plaintiff was not a fit, proper or competent person to be employed in said business; and that if the plaintiff was so employed in the future, the defendants would withhold all business and patronage of their own, and such business and patronage as they could control from any and all insurance companies continuing to employ the plaintiff; and that the same was so understood by those by whom it was received and to whose knowledge it came as aforesaid.")

The office of an innuendo in pleading is well understood. It may serve for an explanation, to point a meaning where there is precedent matter expressed or necessarily understood or known, but never to establish a new charge. It may apply what is already expressed, but cannot add to, enlarge or change the sense of the previous words. (*Bar-*

*ham* v. *Nethersole,* Yelv. 22; *Van Vechten* v. *Hopkins,* 5 Johns. 211; 4 Am. Dec. 339; *Hays* v. *Mitchell,* 7 Blackf. 117; *Patterson* v. *Edwards,* 2 Gilm. 720; *Weed* v. *Bibbins,* 32 Barb. 315; *Thomas* v. *Crosswell,* 7 Johns. 264; 5 Am. Dec. 269; *McClaughry* v. *Wetmore,* 6 Johns. 82; 5 Am. Dec. 194; *Holton* v. *Muzzy,* 30 Vt. 365; *Bell* v. *Sun. Print. & Pub. Co.* 3 Abb. N. C. 157.)

The colloquium, or matter by way of inducement, is pleaded at great length in the complaint, but there are no facts alleged tending to show that the language used in the alleged libel could have any such signification as is averred in the innuendo. The words themselves have no such import, and the extrinsic facts alleged do not show that they were used in any such sense. The words are not equivocal in themselves, have no covert meaning, are plain and unambiguous. In such case they must be taken to have been used in the ordinary signification, and no authority can be found for allowing their meaning to be totally changed by means of an innuendo. The words make no defamatory charge against the plaintiff. For a reason which appeared sufficient and satisfactory to the defendants, they proposed in future to withhold new business. This they had the right to do, whether the reason given was such as ought to have influenced business men or not. They had the right to do it without giving any reason. (*Payne* v. *The W. & A. R. R. Co.* 13 Lea, 507; 49 Am. Rep. 666; Cooley, Torts, 278, 688.)

In whatever light the appellant's contention may be regarded, we think it is not sustained by authority, and that the court below did not err in sustaining the demurrer, and its judgment must be affirmed.