Smart *v.* Blanchard.

## SMART *v.* BLANCHARD.

In an action for a libel upon the plaintiff, in connection with a donation party which she had attended, the character of that party, and the conduct of its members, can not be proved by the defendant under the general issue.

The mere opinions of witnesses as to the meaning of the libel, or that it was of and concerning the plaintiff, are not admissible.

But when the words are ambiguous and the application doubtful, it must be shown that they were used in their actionable sense, and were applied to the plaintiff, and that the hearers so understood them, and, therefore, the testimony of the hearers as to how they understood the words, is admissible.

If a portion of the article claimed to be libelous is omitted in the declaration, but the substance of the charge remains the same, it is no variance.

A publication in a newspaper, if false, is actionable, though the editor believed it to be true, and acted in good faith; and the law will imply malice from such publication.

THIS is an action on the case for a libel. The declaration was as follows:

In a plea of the case, for that the plaintiff is, and from the time of her birth hitherto has been a good, pious, virtuous and honest subject of the state of New-Hampshire, and has always, during all the time aforesaid, behaved and governed herself as such, and until the time of writing and publishing the false, scandalous and malicious libel, hereinafter mentioned, has always been, and was always reputed and esteemed among all her neighbors, and other good and worthy citizens of this state, to be of good name, fame, credit and reputation, and has never been guilty, nor until the time of the writing and publishing the said false, scandalous and malicious libel, suspected to have been guilty of any grossly base or immoral conduct; and on the first day of January, 1858, at Plainfield, in said county, the plaintiff, influenced solely by the motives of benevolence and a desire to relieve the wants of the needy, by the use of suitable and proper means, induced a large number of persons to assemble at the dwelling-house of one Stephen Fifield, in said Plainfield, a poor and needy, but honest, upright, worthy and respectable citizen, for the purpose of relieving the wants and necessities of said Fifield, and his family, by the bestowal of alms and gratuities; said assembly of persons being of that kind or description commonly known as and called a donation party; the plaintiff being then and there present as one of the persons composing said assembly; and the plaintiff, in fact, says that said assembly was conducted in an orderly, temperate and proper manner, and for the purpose aforesaid, and that no spirituous or intoxicating liquors of any kind or description were used by any person present at said assembly, and no disorderly, immoral or improper conduct then and there took place, but that said assembly was, by all persons present thereat, conducted in a decent, orderly,

moral, correct and sober manner; yet the defendant, well knowing the premises, but contriving and maliciously intending to prejudice, degrade and injure the plaintiff, in her good name, fame, credit and reputation, and to hold up and expose her to public infamy, disgrace, hatred, contempt and ridicule, and to disturb and destroy her happiness and peace of mind, and to cause it to be believed that the plaintiff had been active in, and influenced the collection of, and been guilty of taking part in a grossly immoral and intemperate assembly of disorderly, immoral and licentious persons, did, on the 26th day of February, 1858, at said Plainfield, falsely, maliciously and scandalously write and publish, and cause and procure to be written and published, a certain false, scandalous, malicious and defamatory libel of and concerning the plaintiff, of and concerning the said assembly and the part taken therein, and in inducing the persons aforesaid to assemble as aforesaid, containing therein, among other things, the false, scandalous, defamatory and opprobrious matter following, to wit:

" The Rumseller's Benefit.   The neighboring town of Plainfield seems destined to be as notorious for intemperance and drunkard-making as it is for hunker or black democracy.   Are the two things cognate, if not synonymous?   Having a majority of twenty-two black democrats, the people of that ilk, last March, elected a board of selectmen of that peculiar stripe known as the " striped pig order," who licensed two liquor agents, one in the west and the other in the east part of the town, that have been exceedingly compassionate toward those poor chaps, young and old, male and female, both there and elsewhere, in the state and out of it, who are afflicted with that common disease called the itch esophagus or the itch fuddleorum, which they think nothing can allay but rum, gin, brandy, &c.   Now he of the east part being rather low in purse, and very complaisant in helping himself as

well as his neighbors to the "O be joyful," some tender-hearted maidens (meaning the plaintiff among others), whose (meaning the plaintiff among others) age is problematical, and whose (meaning the plaintiff among others) fathers, brothers, and long-longed-for sweethearts, are among his best customers, got up a donation party in his behalf, on new year eve, which was attended, I am told, by a select coterie of the lovers of fun, good eating and good liquor, and had a good time generally, as well as individually and specially. They had, I am told, oysters, fruit, cake, and other knick-knacks, spiritual rappers above stairs, as well as spirits in the cellar, so that if they (meaning the plaintiff among others) could not call spirits from the vasty deep, they (meaning the plaintiff among others) could keep their own spirits up by pouring spirits down. Some went, it is said, because they did not understand the drift of it; some to keep peace with other some; some to secure votes; but the more part (meaning the plaintiff among others) because it was in the vicinity of such a lot of good stuff, both up stairs and down stairs and in the ladies' (meaning the plaintiff among others) chamber. Some, by dint of importunity and want of decision, paid their money, who did not go at all, and some who did go, are now most heartily ashamed of the whole thing. How long they (meaning the plaintiff among others) staid; what and how much they (meaning the plaintiff among others) ate and drank; what plays they (meaning the plaintiff among others) played; what kisses were bestowed on ripe lips and cheeks (meaning the plaintiff) generally innocent of such sweet tokens, and how and when they (meaning the plaintiff among others) got home, are things known only to the moon and silent stars. No bard was there to sing the doings in verse heroic. No chronicler of small events was there to record the "wisdom and the wit" of that "feast of reason and that flow" of bowl. Now, Mr. Editor, such a donation party,

Smart *v.* Blanchard.

(meaning the assembly aforesaid), for such a man and for such a cause, is, I think, " a new thing under the sun," Solomon to the contrary notwithstanding. Our neighbors (meaning the plaintiff among others), no doubt, think with Falstaff, " that the poor abuses of the times want countenance," and, therefore, while the worthy poor are passed by on the other side, he who helps to make men poor, to beggar wives and children, and send men to the poorhouse, the prison, the gallows and the grave, should be encouraged not to be weary in his ill-doing." By means of the writing and publishing of which said false, scandalous, malicious and defamatory libel and libelous matter, by the defendant, of and concerning the plaintiff, of and concerning the aforesaid assembly, she, the plaintiff, is greatly prejudiced, degraded and injured, in her aforesaid good name, fame, credit and reputation, and is held up and brought into and exposed to public infamy, disgrace, contempt, hatred and ridicule, and by means of the writing and the publishing of the said libel as aforesaid, the peace and happiness of the plaintiff have been greatly disturbed, and she has suffered great anxiety and distress of mind.

There were several other counts for the same libel, some of which, in setting out the words, omitted a part of the article, and one especially, commencing with the words, " some tender-hearted maidens," in the seventeenth line of that article. There were, also, several amendments of the declaration made, but they are not material to be stated.

It appeared that the article was published with a note to the words " flow of bowl," as follows : " A slight emendation or restoration of the right reading. For, no doubt, the poet meant to say, if he did not say, not the flow of soul; which is obscure, but the flow of bowl, which is plain to every one not muddled by it."

Some of the words in the published article were italicised, which are not so, as set out in the declaration.

The defendant pleaded the general issue only, and upon the trial, he offered evidence tending to show the character of the donation party, mentioned in the plaintiff's declaration, and the conduct of the persons attending it ; and the court ruled that such evidence was inadmissible, and rejected the same.

The plaintiff introduced witnesses, who were asked to whom they understood the article, alleged to have been published in the Granite State Whig, to apply, and testified that they were acquainted with the parties, and that they attended a donation party at the house of Mr. Fifield, an agent for the town of Plainfield for the sale of spirituous liquors, and knew the persons who were active in getting up said party; and they understood said article to apply to that party, and to the plaintiff and another lady, who were active in getting up the same. This evidence was objected to, but was held admissible, and was received. To both these rulings the defendant excepted.

The court instructed the jury that if the article declared upon agreed, substantially, in its sense and meaning, with the article given in evidence, it was sufficient, and there was no variance ; that if the article declared upon in the fifth count of the plaintiff's declaration, contained in itself a substantial slander, it was sufficient, and no variance, though the first part of the article proved was omitted, and the part alleged commenced at the words in the article given in evidence, " some tender-hearted maidens ;" and that the article charged in the declaration, if they believed it to apply to the plaintiff, was libelous. To these instructions the defendant excepted.

The court declined to instruct the jury, as requested by the defendant, that if they believed the article was published, or caused to be published, by the defendant, in the *bonâ fide* discharge of a moral duty to society, the action could not be maintained without extrinsic evidence of express malice ; and that the persons referred to in the

alleged libelous article were so numerous and uncertain that the action could not be maintained; and the defendant thereupon excepted.

The jury found a general verdict for the plaintiff, and the defendant moved to set it aside by reason of the exceptions.

*Snow*, for the defendant.

1. The evidence offered by the defendant to show the character of the donation party, and the conduct of the persons attending it, should have been admitted. (1) The character of the party was a material allegation of the plaintiff's declaration. 2 Greenl. Ev., secs. 412, 413. (2) This evidence was admissible to prove that the party described in the plaintiff's declaration was not the one referred to by the defendant, in the alleged libel. (3) It was admissible to enable the jury to determine the amount of damages the plaintiff ought to recover. 2 Greenl. Ev., secs. 425, 426. (4) It was admissible under the plea of the general issue to show that this was a privileged communication, or in the nature of a privileged communication. Mr. Fifield was a public officer, and if the article refers to him, it relates to the manner he was discharging the duties of his said office, and to the conduct of persons who had assembled at his house, to encourage him to continue to abuse a public trust. It would have disproved the inference of malice to be drawn from the article itself. It would have proved that the article complained of was a fair comment, in a public journal, on the public acts of a public man. *Earl of Lucan* v. *Smith*, 38 E. L. & E. 395 ; *Cook* v. *Wildes*, 30 E. L. & E. 248 ; 2 Greenl. Ev., sec. 421.

2. The witnesses should not have been permitted to give their opinions as to the party and persons referred to in the alleged libels, but should have been confined to a statement of facts within their knowledge. *Van Vechten* v. *Hopkins*, 5 Johns. 211 ; *Gibson* v. *Williams*, 4 Wend. 320.

3. The court should not have left the question of a variance between the declaration and the evidence to the jury. Any variance is fatal. In addition to the variances, the meaning of that part of the article set up in the fifth count of the amended declaration, is essentially modified by the part omitted. The declaration is not supported by the evidence. 1 Stark. on Slander 365.

4.· The court erred in charging the jury, that, if they found that the part of the article set out in the fifth count referred to the plaintiff, it was libelous.

5. The court under the circumstances should have charged the jury that this was a privileged communication, and that the action could not be sustained without extrinsic evidence of express malice. 2 Greenl. Ev., secs. 421, 423; *Somervil* v. *Hawkins*, 3 E. L. & E. 503.

∘ 6. The persons getting up and attending this party were so numerous and uncertain that no one can maintain an action. The article itself does not refer to the plaintiff, or to her conduct, and she can not sustain an action as one of a class. A nonsuit should have been ordered. *Sumner* v. *Buel*, 12 Johns. 475; *Ryeman* v. *Delavan*, 17 Wend. 52.

*Burke & Waite*, with whom was *Cushing*, for the plaintiff.

1. The evidence offered by the defendant to show the character of the donation party was inadmissible. This question was fully settled in the case of *Knight* v. *Foster*, 39 N. H. 576.

2. The testimony of witnesses acquainted with the circumstances and the parties, that they understood the article to apply to the plaintiff, was competent. 2 Greenl. Ev., sec. 417; 2 Stark. on Slander 45, 46; *Miller* v. *Butler*, 6 Cush. 71.

3. The instructions of the court in regard to the question of variance were correct. It is sufficient if the declaration sets forth the libel substantially. It is sufficient

if the declaration sets forth so much of the article as constitutes an actionable slander.

4. The article was libelous. It may be collected from all the authorities, that any written or printed communication which tends to disparage another, to bring him into disrepute, hatred or contempt, or making him the subject of ridicule or animadversion, is, in the absence of legal excuse or justification, actionable. *Villers* v. *Mousley*, 2 Wilson 403; *Thorley* v. *Kerry*, 4 Taunt. 355; *Bailey*, J., in *McGregor* v. *Thwaites*, 3 B. & Cr. 33; *Clement* v. *Chenis*, 9 B. & Cr. 172; *Cropp* v. *Tilney*, 3 Salk. 225; *Bell* v. *Stone*, 1 B. & P. 331; *Robertson* v. *McDougal*, 4 Bing. 670; *Steele* v. *Southwick*, 9 Johns. 214. Lord *Coke* defines a libel as follows: " A scandalous libel *in scriptis* is when an epigram, rhyme or other writing is composed or published to the scandal or contumely of another, by which his fame or dignity may be prejudiced." 5 Coke 125.

5. The defendant was in no such position as entitled him to animadvert upon the conduct of the plaintiff, and he can not excuse himself upon the ground that he was so acting in the discharge of a moral duty as to entitle this article to be regarded as a privileged communication. *Bradley* v. *Heath*, 12 Pick. 164.

6. This is not a case where the persons referred to in the libel were so numerous or uncertain, that no action will lie. The plaintiff was expressly particularized in the article. She was singled out and expressly made the subject of the slander. The defendant did not content himself with speaking in general terms of the donation party, but he made his libel so expressly to apply to the plaintiff that its application was no matter of doubt among those who knew the plaintiff and were conversant with the circumstances.

7. If there should be found a variance between some of the counts and the libel proved, a general verdict is nevertheless good. It is only where some of the counts are

in themselves bad that the verdict need be specific upon each of the several counts. *Blanchard* v. *Fisk*, 2 N. H. 398. It is not claimed here that any of the counts are in themselves insufficient, but only that some of them are not sustained by the evidence.

*Cushing*, on same side, cited Cooke on Defamation 90, 91, 146, and cases, and *State* v. *Burnham*, 9 N. H. 34.

BELLOWS, J. The evidence offered to show the character of the donation party, and the conduct of the persons attending it was rightfully rejected. Under the general issue the defendant can not prove that the plaintiff was guilty of the acts charged, either in justification, or to mitigate damages or rebut malice. *Dame* v. *Kenney*, 25 N. H. 318; *Pallett* v. *Sargent*, 36 N. H. 496; *Knight* v. *Foster*, 39 N. H. 576. The offer to show the character of the party and the conduct of the persons attending it, could have had no bearing except so far as it tended to show the plaintiff's conduct, and under this plea such proof was not admissible.

Another question is, was it competent to prove the understanding of witnesses that the libel applied to the plaintiff. The meaning of the defendant in this respect is undoubtedly a question of fact to be found by the jury, under the instructions of the court. 2 Greenl. Ev., sec. 417, and notes; *Oldham* v. *Peake*, 2 W. Bl. 959, 962. Whether the libel was of and concerning the plaintiff is a question for the jury to decide. *Van Vechten* v. *Hopkins*, 5 Johns. 211. So far there is no conflict in the authorities, but the important question is, how far is the testimony of witnesses, stating how the libel was understood, to be received. In *Van Vechten* v. *Hopkins* it was held that the opinion of witnesses that, on reading the libel, they believe the plaintiff to be the person intended, was not admissible; and so are *Gibson* v. *Williams*, 4 Wend. 320, 325; *Beardsley* v.

*Maynard*, 4 Wend. 359, and *Goodrich* v. *Davis*, 11 Met. 484. In *Snell* v. *Snow*, 13 Met. 282, it was held that the witness who testified to the words spoken could not be allowed to state his understanding of their meaning. But in *Miller* v. *Butler*, 6 Cush. 71, it was held that a witness might state that in his opinion the term " Colonel" meant " Col. Miller," and the court say that this is not inconsistent with *Goodrich* v. *Davis*, or *Snell* v. *Snow*. So is *Leonard* v. *Allen*, 11 Cush. 241 ; 17 U. S. Dig. 382, sec. 67. And in 2 Greenl. Ev., sec. 417, it is said that to some extent witnesses acquainted with the circumstances must be permitted to state their opinion, conclusion and belief. In accordance with *Van Vechten* v. *Hopkins*, is *White* v. *Sayward*, 33 Maine 322.

Upon the other hand it has been held that it was competent to show, by persons to whom the libel was published, that they understood it to apply to the plaintiff, and that the terms used being ambiguous, so far as they related to the persons intended, it was a question for the jury to determine whether they did so apply or not ; and, consequently, it was incumbent upon the plaintiff, by proper averments and proof, to show that the defendant intended to apply his remarks to the plaintiff ; and, also, to show that the persons who read the libel so understood it. 2 Greenl. Ev., sec. 417 ; 2 Stark. Ev. 861 ; 2 Stark. on Slander 320, 350 ; *Miller* v. *Butler*, 6 Cush. 71 ; *Phillips* v. *Barber*, 7 Wend. 439 ; *Norton* v. *Ladd*, 5 N. H. 200 ; *Smalley* v. *Stark*, 9 Ind. 142 ; *Sasser* v. *Rowe*, 13 Ired. 142 ; *Pond* v. *Hartwell*, 17 Pick. 268 ; *Woolwich* v. *Meadows*, 5 East. 463. In that case Lord *Ellenborough* held that the plaintiff must show the intention of the defendant to impute the crime to the plaintiff, and that it was so understood by the hearers. In *Bowker* v. *Warren*, 2 C. & P. 307, where the person was designated by five asterisks, held it was sufficient, if those who knew the plaintiff understood it ; and witnesses were allowed to state how they

understood it. Similar views are laid down in American Leading Cases 136, 137, and 139, in notes to *Van Vechten* v. *Hopkins*, 5 Johns. 211. It is there said that the ordinary signification and acceptation of words and the understanding of the hearers fix the meaning in slander. See *Robinson* v. *Keyser*, 22 N. H. 323. So when the words were uttered in a foreign language it may be proved that the hearers did not understand them at all. In such cases no injury could have been occasioned by the words, though used in an actionable sense and intended to apply to the plaintiff, but so cautiously expressed as to defeat the purpose. 2 Greenl. Ev., secs. 417–419, and note; 2 Stark. on Slander 51, 52 ; Hobart 268; 1 Vin. Abr. 507; Gilb. Cases, L. & E; 1. Chit. Pl. 406. If the slander is in a foreign language it must be set out in that language and with an English translation, and an averment that the hearers understood them, and so must be the proof. *Zeig* v. *Ort*, 3 Chand. 26 ; 2 Greenl. Ev. 414, note; and so is *Wormouth* v. *Cramer*, 3 Wend. 394. So a libel by pictures or signs must be shown to be understood by the spectators. 2 Greenl. Ev. 414; 2 Stark. on Slander 13, 14.

The distinction that the understanding of the hearer is received for no other purpose than to show the sense in which he received it, and not how it was intended, is recognized in *Leonard* v. *Allen*, 11 Cush. 241; *Sasser* v. *Rowe*, 13 Ired. 142, and *Hawkes* v. *Patten*, 18 Geo. 52. There are some cases, however, which hold that the understanding of the hearers is not admissible for any purpose, as *Snell* v. *Snow*, 13 Met. 278; *Gibson* v. *Williams*, 4 Wend. 320; *White* v. *Sayward*, 33 Me. 322; *Van Vechten* v. *Hopkins*, 5 Johns. 211. In the latter case it was held that the opinion of the witness from reading a libel, that it applied to the plaintiff, was properly excluded; but it appeared that the witness had no knowledge of the circumstances except what he obtained from reading the libel, nor did it appear that he was one of the persons to

Smart v. Blanchard.

whom it was published.   The court held that the intention
of the defendant is not to be proved by the opinion of
witnesses in this way, and *Van Ness*, J., said it was inad-
missible because it went to prove the correctness of an
innuendo which he says is not, like the averment and collo-
quium, the subject of proof by witnesses.   *Spencer*, J.,
who tried· the cause, put the exclusion of the witness
upon the ground that he was called to aid the court in
construing the libel.   The case of *Gibson* v. *Williams*, 4
Wend. 320, goes further, and excludes the understanding
of the witness as to the person intended, but is based
upon *Van Vechten* v. *Hopkins*.

Upon a careful examination of the cases, we are inclined
to hold that the true rules to be deduced from them are
these: That where the words are ambiguous, and the ap-
plication doubtful, it must be shown by the plaintiff.
(1) That the words were actually used in their action-
able sense, and were applied to the plaintiff.   (2) That
the hearers so understood them; and, upon this point, the
testimony of the hearers, as to how they understood them,
is admissible, although it would have no legal tendency to
show in what sense they were actually used, inasmuch
as the hearers may have been under a total misapprehen-
sion, both of the meaning and the application, and it
would be hard that the defendant should be responsible
for such mistake.

Had it appeared, then, as in the case before us, that the
meaning was ambiguous and the application doubtful, and
that the witness was one to whom the libel complained of
was published, his understanding of it would be admissi-
ble, especially if it appeared that he was acquainted with
the circumstances to which it related.   Great.care, how-
ever, should be taken, that under the pretense of show-
ing how the hearers understood an ambiguous expression,
the mere opinion of the witness, as to the interpretation
of the language, should not be received.   And we are

inclined to think that, although in the exercise of a sound discretion, the court would admit such evidence, yet it would not be safe to extend the principle beyond the cases suggested, or to admit such testimony without cautioning the jury not to give it any weight in determining the sense in which the defendant used the words. In this case it does not appear that the witness was one to whom the libel was published, or that he had any peculiar knowledge upon the subject that could not have been readily given to the jury to enable them to determine its application.

Upon the subject of the alleged variance, the court charged the jury that if the article adduced in evidence agreed substantially, in its sense and meaning, with the libel charged, it was sufficient, and this we are inclined to think is correct. *Miller* v. *Miller*, 8 Johns. 74; 2 Greenl. Ev., sec. 414; *Whitney* v. *Smith*, 13 Pick. 372; *Pearsons* v. *Bellows*, 6 N. H. 289; *Bassett* v. *Spofford*, 11 N. H. 127. But all the words need not be set forth, only enough to show the sense and connection in which those set forth were used. *Edgerly* v. *Swain*, 32 N. H. 478; 1 Chit. Pl. 405.

In respect to the fifth count, in which part of the published article is omitted, if what is set out is the same in substance, that is, contains the same charge, not altered substantially by what is omitted, it is well enough. If, however, by taking the whole together it makes a different charge from what is made by the part set out alone, the variance is fatal, although it may have contained a substantial slander, but of a different nature. But we think that the libel, with or without the part omitted, is substantially the same, and in either form, if applied to the plaintiff, is clearly actionable. But it is said that whether there be a variance or not is matter of law, where there is no dispute as to the words. If this be so, still, as the words are before us, and we can see that the jury have found, as the court would pronounce the law, no injury is

done, and the verdict should not, on that account, be disturbed.

The court properly declined to instruct the jury as requested—that if the defendant acted *bonâ fide* in the discharge of what he believed to be his duty, the action could not be maintained without extrinsic proof of express malice. The conductor of a public press has the same rights to publish information that others have, and no more. He has no peculiar rights or special privileges or claims to indulgence. He may publish the truth, but has no right to publish falsehood to the injury of others. The case of a conductor of a public press does not come within the class of persons privileged in their communications. *Sheckel* v. *Jackson*, 10 Cush. 25. If false, the law infers malice from the publication, although in a newspaper, unless the contrary is shown. *King* v. *Harvey*, 2 B. & C. 259. There is no right in printers more than others to do wrong, and they are not justified because they did not write the article, or did not know the plaintiff; that does not disprove malice, but often aggravates it by showing a wantonness and indifference whether it be true or false. *Story*, J., in *Dexter* v. *Spear*, 4 Mason, 115. The liberty of the press is not endangered by the punishment of libelous publications. Any publication is a libel which tends to degrade, injure, or bring a person into contempt and ridicule; or accuses him of crime or other act odious or disgraceful. It is even held in England, that a report of proceedings and testimony in a preliminary examination of the plaintiff, before a magistrate, if false and injurious, is a libel. *Duncan* v. *Thwaites*, 3 B. & C. 556. So it is held that a publication in a newspaper is actionable, though the editor believed it to be true, and did it from good motives. *Usher* v. *Severance*, 20 Me. 9. And so in *Hotchins* v. *Oliphant*, 2 Hill 510—held no defense that he copied from another paper.

Where many persons are included in the same attack,

the plaintiff is not the less entitled to redress; *Ellis* v. *Pickering*, 16 Pick. 132; and the words, "your children are thieves," will give a right of action to each; *Giding* v. *Blake*, 11 Johns. 54, citing *Foxcraft* v. *Lacy*, Hob. 89, where the words were "these defendants helped murder H. F.;" although there were seventeen of them, it was held that each might sue. Where the words relate to a class of persons, as printers, for example, the law is otherwise, as appears in *Giding* v. *Blake*, and cases there cited.

Our conclusion, then, is, that there was error in admitting the opinion of the witness, as to the application of the libel to the plaintiff, and therefore the

*Verdict must be set aside.*