(46 Misc. Rep. 486.)

### BIANCHI v. STAR CO.

(Supreme Court, Trial Term, Kings County. March, 1905.)

1. LIBEL—COMPLAINT—SUFFICIENCY.

In an action for libel, where the alleged defamatory matter in its application to plaintiff depends on extrinsic facts not pleaded, and the allegation that the matter was published of plaintiff is denied by the answer, a motion to dismiss the complaint, as not stating facts constituting a cause of action, will be denied.

2. SAME—EVIDENCE.

In an action for libel, evidence *held* insufficient to justify a verdict finding that the alleged defamatory matter was published of and concerning plaintiff.

Action by Victor Bianchi against the Star Company. Motion by defendant to dismiss complaint denied. Motion to set aside verdict and for a new trial granted.

Clarence J. Shearn (Mirabeau L. Towns, of counsel), for the motions.

James C. Cropsey, opposed.

SPENCER, J. The action is libel. The defamatory matter does not refer directly to the plaintiff, but its application to him depends upon extrinsic facts. These facts are not alleged in the complaint;

the plaintiff, as provided in section 535 of the Code of Civil Procedure, relying upon a general allegation. The defendant contends that the complaint should be dismissed as not alleging facts constituting a cause of action. It cites Corr v. Sun Printing & Publishing Ass'n, 177 N. Y. 131, 69 N. E. 288. But there was a demurrer in that case, and the only question decided was that the averment of facts in the complaint contradicted and rendered nugatory its general allegation. As aptly stated by Judge Vann in his dissenting opinion, "the plaintiff pleaded himself out of court." In the case at bar, the defendant has answered and put in issue the allegation that the defamatory matter was published of and concerning the plaintiff, and therefore I think the appropriate rule is the one laid down by Judge Vann in the Corr Case, supra, wherein he says:

"I think the plaintiff is entitled, by virtue of the statute (Code Civ. Proc. § 535) and the general allegation according therewith, to prove facts of the character suggested without alleging them. Such facts * * * show the application of the defamatory matter to the plaintiff. They point out the person to whom the defendant referred. They identify the object of the libel, and it is unnecessary that every detail of the identification should be correct, provided there is enough to properly convince the jury that the plaintiff is the one intended and that her acquaintances would so understand on reading the article."

After diligent search, I have not discovered any serious dispute of the proposition so lucidly set forth. The courts, it is true, in some instances have confounded the colloquium, the allegation of extrinsic facts to make the words applicable to a particular person, with the innuendo, the allegation of matter imparting defamatory character to the words published. But it has always been held that extrinsic facts are appropriate to the colloquium. In Van Vechten v. Hopkins, 5 Johns. 211, 219, 4 Am. Dec. 339, Mr. Justice Van Ness said:

"The averment of extrinsic matter, in this declaration, was for the purpose of showing that the libel was published, as it is expressly alleged to have been, 'of and concerning the plaintiff.' And whether it was so published or not is a question of fact, which it is the province of the jury, and not of the court, to decide."

There was no variance between the learned judges of the Court of Appeals in the Corr Case on this question, and I think it must be regarded as the rule applicable in cases where the defendant has answered. The motion, therefore, to dismiss the complaint must be denied.

The plaintiff has recovered a verdict of $3,000, and the defendant now asks the court to set the verdict aside as against the evidence. To appreciate the grounds of this motion it is necessary to understand some of the undisputed facts connected with the publication. It appears that in May, 1901, the families of Thomas A. Edison, Warren Smith, and Victor Bianchi (the plaintiff), residents of the city of Orange, N. J., received anonymous letters threatening that, unless there were deposited certain sums of gold at places indicated, their children would be kidnapped. The matter became the subject of public concern and police investigation. The parents of the children became alarmed, and detectives were employed to guard

their homes.  The defendant, the publisher of a newspaper in the city of New York, published a number of articles.  They contained numerous references to the different members of the respective families, including that of the plaintiff; but none of these are alleged to be libelous.  The articles also contained certain allusions to an unnamed resident of Orange, who, it was said, was suspected by the police of having written the threatening letters.  These statements are libelous, unless true, and the plaintiff brings this action, alleging that the descriptions of the "suspect" have application to himself.  On the trial, the plaintiff gave proof that the suspect's business, position in society, family, and other circumstances, as set forth in the publications, fulfilled the conditions which existed in his own business, family, and life, and that the similarity was such that the jury should find that his friends and neighbors, upon reading the articles, would understand that the allusions to the "suspect" were intended for him.  The jury having found that such was the fact, I am called upon to determine whether such finding is sustained by the proof.  To accomplish this, it will be necessary to compare the publication with the proof, item by item, to see if there be any such agreement between them as will justify the finding.

The first publication states: "The person suspected is a man well known in Orange, where he has lived for several years."  The plaintiff proved that he had resided and done business in Orange for four years, but there is no proof as to the extent of his acquaintance there.

It also states: "He is prominent in business."  The plaintiff testified that he conducted a store for the sale of wines and liquors to the family trade.  Beyond this, there was no proof of any other business relations or operations.

It adds: "While his family do not move in the select social circle of the Oranges, they are very prominent in the foreign colony."  The plaintiff gave no proof as to what part his family took in the social circles of Orange, but testified that he did not belong to any societies, except for insurance, and held no office in those; that he had never given any entertainments, balls, receptions, or teas, and had not attended any, but confined his attention to his business.

It also adds: "He is deeply interested in the kidnapping cases, and has talked freely with his friends and the police."  The plaintiff testified that he was interested in the cases and had talked freely about them with his friends and the police.

It also adds: "Pinkerton detectives have followed the suspect's movements day and night for two weeks, and a mass of evidence, circumstantial, it is true, has been gathered which is overwhelming, but without the missing link is not absolutely positive."  The plaintiff failed to make any proof that he had been followed by the detectives or his movements observed by them.

It also adds: "The suspect has a family of three children, the eldest of which is about 16 years old, and her beauty attracts attention wherever she goes."  The plaintiff testified that he had a

family of three children, the oldest being a girl of about 17 years, but there is no evidence as to whether she is beautiful or attracts attention.

It also adds: "The police have practically traced the rubber type to the home of the suspect." The plaintiff offered no proof that he had rubber type in his house, or that the police claimed to have found any there, or that there was any public rumor of there having been rubber type in his home.

The day following the first publication the defendant published another article, which contained statements in regard to the "suspect," as follows:

"When the expected arrest is made the police promise a sensation. The suspected man, who stands high in society in Orange, has, it is asserted, been leading a double life, and the woman in the case is the one who has been at the head of his second household. Efforts to find in Orange rubber type similar to that used for the letters have failed, and the police have also failed to find any paper on sale there like that used by the criminal. It is known that members of the suspected man's family had similar type and paper. The Smith and Bianchi houses are guarded by the police."

The plaintiff testified that he had never led a double life or had a second household. He failed to show that he or his family possessed type and paper similar to those used in the writing of the letters, or that there was any report that such was the fact.

I take it that, in order to justify the verdict, the evidence must be sufficient to enable the jury, having Bianchi as he has described himself in their minds, to say that, upon reading the publication, his neighbors and acquaintances would recognize him as the person intended.

The case of People v. Parr, 42 Hun, 313, was a criminal prosecution for libel. The name of the plaintiff was not mentioned in the publication, but it was claimed by the people that he was intended. The people produced witnesses who testified that, upon reading the publication, they recognized that it referred to the complainant, Oppenheim. In discussing the question whether such evidence was proper, the court, among other things, said:

"It was for the people to show facts from which the jury might infer that Oppenheim was the person intended by defendant. The testimony of witnesses that they recognized Oppenheim as referred to was only the statement of their opinion. And this matter was not one for experts. Their opinion must have been based upon facts known to them. They should have testified only to such facts. * * * The attempt is to show that it (the publication) is aimed at a particular person by the opinion of several who read it. * * * But it must be shown by circumstances surrounding the parties."

In the case at bar, the description of the "suspect" in some particulars coincides with the plaintiff. Plaintiff had lived several years in Orange; but the town contained 30,000 people, with many men of his nationality in business. He had a family of three children; but it is a matter of common knowledge that such families are common. He was deeply interested in the kidnapping cases, and talked freely about them with his friends and the police; but it is fair to assume that many people were interested in the matter,

95 NEW YORK SUPPLEMENT
and 129 New York State Reporter

and talked among their friends and to the police in regard to the same. These points are clearly matters which might apply to a number of persons, and fail to point to the plaintiff to the exclusion of others.

In some striking particulars, the "suspect" in no way tallies with the plaintiff. The "suspect" was prominent in business and society in Orange; but it is impossible from the testimony to arrive at the conclusion that the plaintiff was prominent in either. The "suspect" had been followed for two weeks night and day by Pinkerton detectives; but the plaintiff had not been under police surveillance. It is true the publication states that the police guarded his home; but this was for the protection of his children, and in no way differed from the protection given to the other families to whom the threatening letters had been sent. It was known that rubber type and paper such as were employed by the writer of the threatening letters had been in the home of the "suspect," but the plaintiff makes no claim that such type and paper had been in his home or that any report to that effect had existed. It is also claimed that the "suspect" had been living a double life, and that the woman in the case, who (as stated in a part of the article not quoted) resided in Newark, had been at the head of his second household; but none of these things were true of the plaintiff, and there is nothing to show that such reports were rife concerning him.

I think the points in which the life and circumstances of the plaintiff do not find their counterpart in those of the "suspect" destroy and render nugatory those items where agreement exists, and that the proof does not justify the verdict that the defamatory matter was published of and concerning him.

The motion to set aside the verdict is therefore granted, and a new trial ordered, on payment by defendant within 20 days of the costs of the action, including the trial; and, in default of such payment, the motion is denied, with costs. Ordered accordingly.